## A00A2036. HOLY FELLOWSHIP CHURCH OF GOD IN CHRIST v. FIRST COMMUNITY BANK OF HENRY COUNTY.

(545 SE2d 164)

MILLER, Judge.

In this action to set aside a deed under power, the trial court dismissed the amended complaint "unless Plaintiff pays the indebtedness of $32,022.85 within forty-five (45) days into the registry of the Court. . . ." We treat this as the grant of summary judgment.

The following undisputed chronology is relevant: In September 1996, appellant-plaintiff Holy Fellowship Church of God in Christ purchased real property on which it operated worship services and church activities. The conveyance was financed by appellee-defendant First Community Bank of Henry County, which took back a deed to secure debt for the amount of $184,121.90. The Church expressly promised to pay the principal "ON DEMAND, BUT IF NO DEMAND IS MADE[,]" then the promissory note called for 34 installment payments of $2,003.46 followed by a balloon payment of $166,142.14. In August 1997, the Church entered into a renewal note with additional monies[1] in the principal sum of $206,677.34 and modified the security deed to reflect this larger debt. The renewal note also was a demand note but in the absence of a demand contemplated 34 monthly payments of $2,317.79 commencing October 1, 1997, followed by a balloon payment of $186,815.59.

In a letter dated November 1, 1997, the Bank informed the Church that the balance of the renewal note would be accelerated unless the Church paid $10,034.34 to cover past due amounts. Specifically, this amount was needed to cover the nonpayment of the October and November 1997 installments and to make good a $5,398.76 check drawn August 29, 1997, which had been returned September 3 for insufficient funds. This letter of intent to accelerate gave the Church 30 days (i.e., until December 2) to pay the past due sums and to make good the insufficient funds check, but required that any such payment be by cashier check, money order, certified funds, or cash.

Two checks for $2,352.79 each[2] were subsequently delivered by the Church to and accepted by a Bank teller, one check on December 5 and the other on December 19. The Bank had no practice, once a loan was accelerated, to notify tellers to accept no further payments on the defaulted loan. The computers for the tellers would not indicate the status of a loan when a payment was accepted. These payments were credited to the Church's loan and were not refunded by the Bank.

---

[1] No new money was extended, but the real estate loan was combined with two separate loans for the purchase of equipment.

[2] This amount would equal one month's normal payment plus a $35 late fee.

Meanwhile, on December 9, the Bank notified the Church that the debt was accelerated for failure to make payment as demanded. This letter directs that any payments be made directly to the attorneys for the Bank.[3] After receiving the two December payments, the Bank directed its counsel to continue with the foreclosure as scheduled. As of the foreclosure date, the Church was in arrears for the December payment, the January payment, and the $5,398.76 for the ISF check. On January 6, 1998, the Bank as attorney-in-fact for the Church conveyed the property to itself via the deed under power of sale that the Church desires to set aside.

The Bank moved to dismiss the complaint as amended, and, after a hearing which was not recorded, this motion was granted in October 1998. On appeal, the Church contends there is evidence that the lender accepted the borrower's repeated late, irregular payments, which is sufficient to create factual disputes whether the parties entered in a quasi-new agreement under OCGA § 13-4-4 and whether any anti-waiver provisions in the deed or promissory note were themselves waived.[4] We affirm.

1. There is evidence that under the *original* note, the Bank accepted late payments and once accepted irregular payments. But "evidence of a departure from the terms of previous loans has no bearing upon the outcome of the case sub judice."[5]

2. Pretermitting whether proof that the Church made late regular payments that were not rejected and returned created a factual issue as to a mutual departure of the terms of the loan regarding regular payments, there is simply no evidence that the Bank consented to nonpayment of the $5,398.76 represented by the Church's check returned for insufficient funds and never made good. "Before the provisions of [OCGA § 13-4-4] would apply to non-payment the evidence must establish a pattern or course of conduct evidencing an agreement or waiver of the provisions in the original contract relating to non-receipt of monthly payments."[6]

Since the Bank was authorized to foreclose due to the complete nonpayment of obligations under the renewal demand note,[7] the arguable factual questions regarding acceptance of late regular payments ultimately are not material.

---

[3] There is also uncontradicted evidence that, during the last week in November, Bank President Blackmon told the Church's Reverend Paden the Bank was not in a position to accept any more partial payments and that Paden needed to talk with the Bank's legal counsel.

[4] See *Baxter v. Ga. Fed. Sav. &c. Assn.*, 152 Ga. App. 753-754 (1) (264 SE2d 242) (1979). Accord *Curl v. Fed. Sav. &c. Assn. of Gainesville*, 241 Ga. 29 (244 SE2d 812) (1978).

[5] *Minor v. C & S Nat. Bank*, 177 Ga. App. 115, 118 (1) (338 SE2d 466) (1985).

[6] *Newby v. Bank of Pinehurst*, 159 Ga. App. 890, 891 (285 SE2d 605) (1981).

[7] See former OCGA § 11-3-122 (1) (b).

*Judgment affirmed. Pope, P. J., and Mikell, J., concur.*

Decided February 12, 2001 —
Reconsideration denied March 2, 2001 —

*John A. Pickens, Newton H. Purvis*, for appellant.
*Thomas E. Baynham III*, for appellee.